CRAIG SMITH *v.* SAFECO INSURANCE COMPANY
OF AMERICA
(14601)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued March 30—decision released May 18, 1993

*Richard A. Silver,* with whom, on the brief, were *Douglas J. Gall* and *Marilyn Ramos,* for the appellant (plaintiff).

*Jon S. Berk,* with whom was *Claudia A. Baio,* for the appellee (defendant).

PETERS, C. J. The issue in this case, on certification from the United States District Court, is whether the provisions of General Statutes § 52-225a[1] governing

---

[1] General Statutes § 52-225a provides in relevant part: "REDUCTION IN ECONOMIC DAMAGES IN PERSONAL INJURY AND WRONGFUL DEATH ACTIONS FOR COLLATERAL SOURCE PAYMENTS. (a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h."

General Statutes § 52-225b defines "collateral sources" as follows: "For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs

collateral source payments apply to a claim for underinsured motorist benefits. The plaintiff, Craig Smith, has underinsured motorist coverage[2] under an automobile insurance policy issued to his parents by the defendant, Safeco Insurance Company of America. He sustained serious injuries in a multicar accident resulting from the negligent conduct of two underinsured drivers.

The plaintiff filed a four count complaint[3] in the United States District Court for the District of Connecticut, seeking to recover under the underinsured motorist provision of the policy issued by the defendant. In response, the defendant filed a number of affirmative defenses, including a defense alleging that "[a]ny recovery is to be reduced by collateral source payments made on behalf of the plaintiff." The parties thereafter stipulated that counts two through four of the plaintiff's complaint should be dismissed with prejudice. With respect to the remaining first count, they

of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement."

General Statutes § 52-572h (a) (1) defines "economic damages" as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding [compensation for physical pain and suffering and mental and emotional suffering]."

[2] The uninsured motorist coverage provided by the defendant includes coverage for injuries caused by an underinsured motorist. *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 151, 617 A.2d 451 (1992).

[3] The first count of the plaintiff's complaint alleged that the defendant's refusal to pay the plaintiff's claim for underinsured motorist insurance was a breach of the defendant's contractual obligation. The second count alleged that the defendant's refusal to pay was an unfair insurance practice, in violation of General Statutes § 38-61 (1), (6) and (15). The third count alleged that the defendant's refusal to pay was an unfair trade practice, in violation of General Statutes § 42-110b. The fourth count alleged that the defendant's refusal to pay violated the implied covenant of good faith and fair dealing inherent in the defendant's contractual relationship with the plaintiff.

stipulated that the defendant was paying benefits to the plaintiff, under the underinsured motorist policy, in the amount of $444,140.21, and would pay the plaintiff an additional $66,178.70 "[i]f the court holds that collateral source payments are not applicable to underinsured motorists claims . . . ." The District Court then certified to this court, pursuant to General Statutes § 51-199a and Practice Book § 4168,[4] the question reserved by the stipulation.[5] We conclude that collateral source payments, under § 52-225a, apply to an underinsured motorist claim to reduce the amount of the claimant's award of damages but not to diminish the amount of the coverage afforded by the underinsured motorist insurance.

We start with the text of § 52-225a (a), which provides, in relevant part, that "[i]n any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal

[4] General Statutes § 51-199a provides in relevant part: "UNIFORM CERTIFICATION OF QUESTIONS OF LAW ACT. . . .

"(b) The supreme court may answer questions of law certified to it by . . . a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

Practice Book § 4168 provides: "[CERTIFIED QUESTIONS FROM FEDERAL COURTS]—IN GENERAL

"The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

[5] The certified question of law is: "Are collateral source payments under [General Statutes] § 52-225a applicable to underinsured motorist claims?"

After the filing of briefs in this court, the plaintiff moved to withdraw the certified question. On March 25, 1993, the District Court denied the motion.

injury or wrongful death . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by [unreimbursed collateral source payments in accordance with subsections (b) and (c)]." Collateral source payments are defined by General Statutes § 52-225b as payments made to a claimant pursuant to health or sickness insurance.[6]

The first issue raised by the certified question is whether § 52-225a applies directly to insurance contracts so as to reduce the amount of insurance coverage available to claimants who seek recourse to underinsured motorist benefits and who have received collateral source payments. Although § 52-225a applies to actions sounding in contract, as well as to actions sounding in tort, we hold that the statute does not reach that far. The statute defines the offset for collateral source payments as reducing awards for economic damages resulting from personal injury or wrongful death. A claim concerning coverage under an insurance policy does not, in common parlance, give rise to an award for damages of any kind, let alone to an award for damages resulting from personal injury or wrongful death. The words used in a statute must be given their commonly approved meaning, unless a contrary intent is clearly expressed. General Statutes § 1-1 (a); *Superintendent of Police* v. *Freedom of Information Commission,* 222 Conn. 621, 628 n.7, 609 A.2d 998 (1992); *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* 212 Conn. 100, 105, 561 A.2d 429 (1989); *Martone* v. *Lensink,* 207 Conn. 296, 302, 541 A.2d 488 (1988). We conclude, therefore, that § 52-225a does not, on its face, create a statutory offset against the coverage provided by underinsured motorist benefits.[7]

---

[6] See footnote 1 for the text of General Statutes § 52-225b.

[7] The defendant acknowledges, in its brief, that the collateral source reduction is not to be deducted from the limit of underinsured motorist coverage.

This construction of § 52-225a is supported by reading the statute conjointly with other legislative mandates specifically governing underinsured motorist insurance. We presume that the legislature intends to create a harmonious and consistent body of law for statutes relating to the same subject matter. See *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council,* 215 Conn. 474, 482–83, 576 A.2d 510 (1990); *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987). With respect to underinsured motorist claims, General Statutes § 38a-336 and the corresponding regulation, § 38a-334-6 of the Regulations of Connecticut State Agencies (formerly § 38-175a-6),[8] not

---

[8] General Statutes § 38a-336 (formerly § 38-175c) provides in relevant part: "UNINSURED MOTORIST COVERAGE. (a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. . . .

"(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

The Regulations of Connecticut State Agencies, § 38a-334-6 provides in relevant part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS [formerly § 38-175a-6].

only require automobile liability insurers to provide underinsured motorist insurance, but also limit the grounds upon which such insurance may be excluded or limited. Significantly, neither the underinsured motorist statute nor the regulation authorizes a reduction in underinsured motorist coverage because of the claimant's receipt of collateral source payments. Cf. *Lowrey* v. *Valley Forge Ins. Co.,* 224 Conn. 152, 156, 617 A.2d 454 (1992).

The second issue is whether, even if § 52-225a does not operate to reduce underinsured motorist coverage,

---

"(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent. . . .

"(c) EXCLUSIONS. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured motor vehicle is owned by (A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing, (B) a self insurer under any motor vehicle law, or (C) any government or agency thereof;

"(3) to pay or reimburse for workers' compensation or disability benefits.

"(d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

it may nonetheless affect a claimant's underinsured motorist recovery by reducing the amount of the damages that the claimant may collect. We hold that the statute authorizes such a reduction in the amount of compensable damages. Under the circumstances specified in § 52-225a, a personal injury claimant who recovers an award of economic damages from a tortfeasor must have the award reduced by the amount received as collateral source payments. Under § 38a-336, underinsured motorist coverage provides insurance protection for claimants who are legally entitled to recover damages from the owners or operators of underinsured motor vehicles because of bodily injury. The public policy of § 38a-336 is to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained an adequate policy of liability insurance. *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 499, 610 A.2d 1212 (1992); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). Because underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor; see *Bodner* v. *United Services Automobile Assn.*, supra; the statutory reduction mandated by § 52-225a operates as a limitation on the amount of damages that a claimant may recover through underinsured motorist insurance. Indeed, the plaintiff acknowledges, in his brief, that the underinsured motorist insurer is entitled to a credit for collateral source payments received by the claimant insofar as such payments reduce the amount that the claimant is legally entitled to recover from the tortfeasor.

The relationship between § 52-225a and underinsured motorist protection turns, therefore, on the distinction between the amount of coverage and the amount of

damages. A claimant is entitled to the full amount of his or her underinsured motorist coverage if, after the claimant's recovery from the tortfeasor has been reduced by collateral source payments in accordance with § 52-225a, the claimant's uncompensated personal and economic damages exceed the amount of the insurance coverage. A claimant's recourse to his or her underinsured motorist coverage is, however, limited in amount to less than his or her full coverage if the amount of the award against the tortfeasor for personal and economic damages, reduced in accordance with § 52-225a, results in uncompensated damages that are less than the full amount of the underinsured insurance coverage. In other words, while § 52-225a does not authorize collateral source payments to be deducted from a claimant's available underinsured motorist coverage, it does authorize such payments to enter into the calculation of the claimant's compensable injuries and losses.

The question certified by the District Court asks "Are collateral source payments under [General Statutes] § 52-225a applicable to underinsured motorist claims?" Our answer is that such payments are applicable, in accordance with the statute, to determine the amount of damages but not to determine the amount of coverage.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.