[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: COLLATERAL SOURCE PAYMENTS
Defendant Safeco Insurance Company of North America moves pursuant to Practice Book § 320 and General Statutes §52-225a for a reduction in the verdict rendered in favor of the plaintiffs, Jason Byron and Roy G. Byron, in an amount equal to the collateral source payments that were paid to the plaintiffs by a medical insurance company. The parties disagree on the applicability of § 52-225a and the amount of the collateral source benefits that the plaintiffs received. For the reasons stated below, the court reduces the award of economic damages by $38,837.96
Jason Byron suffered severe injuries in an accident caused by an underinsured motorist. Jason had been sitting on the hood of a car when the driver suddenly accelerated from a standstill causing Jason to fall off and sustain a head injury. Since the driver's liability coverage was insufficient to compensate Jason and his father for their injuries and losses, they brought this suit against Safeco to recover underinsured motorist benefits pursuant to coverage provided by an insurance policy issued by Safeco to ROY G. Byron. Jason sought compensation for personal injuries. His father sought compensation for Jason's medical bills. The jury awarded the Byrons economic damages in the amount $276,210.00 and noneconomic damages in the amount $184,140.00 for a total award of $461,350.00. This amount was less than the full coverage for underinsured motorist benefits.
The first issue to be resolved is the applicability of General Statutes § 52-225a. The statute, which is in three parts, specifies (a) a method by which a damage award is to be reduced by an amount equal to the total of the collateral source payments paid for the benefit of the claimant, (b) a hearing procedure for receipt of evidence of collateral source payments, and (c) a hearing procedure for receipt of evidence of amounts paid to secure the right to collateral source payments, i.e. medical insurance premiums. "The intent of the legislature in enacting Section 52-225a was to abolish the collateral source rule, thereby precluding personal injury plaintiffs from recovering the same benefit twice: once from a collateral source, such as a health insurance plan, and again from the tortfeasor." CT Page 13540Pajor v. Town of Wallingford, D.N. 94-0366807, judicial district of New Haven, 17 CONN.L.RPTR. 255 (Hodgson, J., filed 6/7/96).
The plaintiffs contend § 52-225a is inapplicable because the jury "only showed the net amount of economic and non-economic loss awarded the plaintiff under an insurance contract after deduction for contractual set offs." See Plaintiffs'Objection to Defendant's Motion for Arrest of Judgment
at p. 4. The plaintiffs argue that the jury's task was to determine the amount of damages the driver of the car would have been required to pay to the Byrons had the Byrons successfully sued the driver. Because Safeco did not present evidence of collateral source payments during the trial, the plaintiffs claim that Safeco has waived its right to show that the Byrons would have recovered a lesser amount had they successfully sued the driver.
This court concludes that Safeco did not waive its right to seek a reduction for collateral source payments. Section 52-225a
(a) provides, in relevant part, as follows: "In any civil action,whether in tort or in contract, wherein the claimant seeks to recover damages resulting from. . . . personal injury . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h" (emphasis added). In Smith v. Safeco InsuranceCompany of America, 225 Conn. 566 (1993), the Supreme Court answered, on certification from the United States District Court, the following issue: "whether the provisions of General Statutes § 52-225a governing collateral source payments apply to a claim for underinsured motorist benefits." Id. at 567. In answering this question, the court stated "a personal injury claimant who recovers an award of economic damages from a tortfeasor must have the award reduced by the amount received as collateral source payments." Id. at 573. The court further explained that "while § 52-225a does not authorize collateral CT Page 13541 source payments to be deducted from a claimant's available underinsured coverage, it does authorize such payments to enter into the calculation of the claimant's compensable injuries and losses." Id. at 574. If the reduction set forth in § 52-225a did not operate in this case, the plaintiff would obtain a greater recovery than would have been available from the tortfeasor, which result is contrary to the public policy discussed in the Smith case. Id. at 573. The statute applies. Under the statutory scheme, the trial court is to receive collateral source evidence after the verdict but before entering final judgment. See, Jones v. Parzych,37 Conn. App. 784, 787 (1995).
The plaintiffs claim that a reduction for collateral source payments should not be made even if § 52-225a applies because the health insurance contract under which the payments were made sets forth a right of subrogation. Section 52-225a provides "that there shall be no reduction for . . . a collateral source for which a right of subrogation exists. . . ." The contract contains a subrogation provision. However, the effect of the provision is cancelled by General Statutes § 52-225c, which provides "no insurer . . . providing collateral source benefits . . . shall be entitled to recover the amount of any such benefits. . . ." While the prohibition in § 52-225c against subrogation may be preempted and nullified in some cases by the federal Employment Retirement Income Security Act ("ERISA"),29 U.S.C. § 1144 (a), this is not such a case. There is no evidence that the medical insurance plan was funded by Mr. Byron's employer. To the contrary, an employee of the health plan testified that the plan was not set up under ERISA. Because the medical insurance plan was not set up under ERISA, the subrogation provision is ineffective. Consequently, the plaintiffs are not exempt from having their damage award reduced by the amount of collateral source payments.
The plaintiffs next claim that there should be no reduction for collateral source payments because the proper calculation cannot be made in the absence of a finding on the degree of comparative negligence attributable to Jason Byron. Such a finding is necessary since § 52-225a provides that "there shall be no reduction . . . for that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h." The parties conduct when selecting the jury forms that were submitted to the jury is relevant to the present inquiry. CT Page 13542 The court charged the jury on the principles of comparative and contributory negligence, which was appropriate under the facts of this case. See Gen. Stat. § 52-572h(b). No exceptions were taken to the charge on comparative and contributory negligence. After the court completed the charge, it requested counsel for both sides to review various verdict forms, which the court had prepared. With respect to the jury's reporting a plaintiffs' verdict, the court prepared alternate forms and asked for counsels' comments so that a form could be selected. One form contained provisions for the jury to report the percentage of Jason's contributory negligence, if any, as well as provisions to report economic and noneconomic damages. The other form contained provisions to report economic and noneconomic damages, but not contributory negligence. The plaintiffs' attorney objected to the use of the form that contained provisions for noting the percentage of contributory negligence. Defense counsel stated that he didn't see any problem with any of the forms. Thereafter, the jury was given the form that did not contain a provision for reporting the percentage, if any, of contributory negligence attributable to Jason Byron. The jury reported an award of economic damages in the amount $276,210.00 and noneconomic damages in the amount $184,140.00.
The absence of a finding as to comparative negligence should be borne by the defendant since it had the opportunity to have such a finding. It cannot complain of self-induced error. See Fox v. Fox, 168 Conn. 592, 594 (1975). Placing the burden on the defendant does not mean that no reduction should be made. The court should endeavor to fulfill the legislative intent of § 52-225a This can be done by limiting a reduction to fifty percent of the collateral source payments. The jury did not find Jason more than fifty percent at fault since such a finding would have resulted in a defendant's verdict. If the jury found Jason to be fifty percent or less at fault, the collateral source benefits would be deducted from economic damages in proportion to his degree of fault. Under the circumstances, the reduction should be limited to fifty percent.
The court has reviewed the evidence on the medical insurance benefits paid by Physicians Health Services and finds that the total of the collateral source payments is $90,474.87. The statutory scheme provides that the plaintiffs are to receive an offset for the amounts paid to secure the medical insurance. The parties have presented evidence as to the premiums that Mr. Roy G. Byron paid for family coverage and the premiums he would have CT Page 13543 paid if he had purchased medical insurance only for himself. The difference between these two premium rates is the "amount which has been paid, contributed, or forfeited . . . by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit. . . ." Gen. Stat. §52-225a(c). The amount paid April through December of 1991, and 1992 through 1995 is $12,798.96. This amount is to be subtracted from the collateral source payments of $90,474.87 ($90,474.87 minus $12,798.96 = $77,675.91) and fifty percent of the result, i.e. $38,837.96, is the amount by which the award of economic damages is to be reduced. Judgment should enter for $421,512.04 (award for economic damages of $276,210.00 less collateral source reduction of $38,837.96 plus award for noneconomic damages of $184,140.00 = $421,512.04).
Upon the filing of this memorandum, judgment shall enter in favor of the plaintiffs in the amount of $421,512.04.
THIM, JUDGE