# JOHN FAHEY v. SAFECO INSURANCE COMPANY OF AMERICA
## (AC 17036)

O'Connell, C. J., and Lavery and Landau, Js.

Argued March 19—officially released July 7, 1998

*Robert R. Sheldon*, with whom, on the brief, were *Douglas P. Mahoney* and *Frank A. Bailey*, for the appellant (plaintiff).

*Kevin R. Murphy*, with whom, on the brief, was *Robert J. Sickinger*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, John Fahey, appeals from the trial court's judgment in favor of the defendant, Safeco Insurance Company of America, in an action seeking the recovery of underinsured motorist benefits. The plaintiff claims that the trial court improperly (1) rendered judgment in favor of the defendant, (2) prevented the plaintiff from presenting to the jury evidence of the insurance contract, (3) opened the evidence following acceptance of the jury's verdict, (4) interpreted the insurance policy and (5) precluded expert testimony concerning the risk of future surgery. We disagree and affirm the judgment of the trial court.

The following facts are undisputed. On April 25, 1992, the plaintiff was injured in a motor vehicle collision caused by Helen Super in Trumbull. The plaintiff settled his claim with Super for $100,000, the full extent of her automobile insurance coverage. The plaintiff then sought underinsured motorist benefits under an automobile liability insurance policy he had with the defendant. The liability of the tortfeasor was admitted by the defendant, and the case was tried before a jury on the issue of damages. In his closing argument, the plaintiff argued to the jury that its role was to determine the plaintiff's fair, just and reasonable damages, and that the judge would later make adjustments and reductions to the verdict. The court instructed the jury that its task was to award the plaintiff, if it found in his favor,

compensation "from dollar one" to such an amount that would compensate him fully as fair, just and reasonable damages. The court also instructed the jury that the court would deduct the amount of any compensation previously received by the plaintiff from the amount of any verdict. The jury returned a verdict for the plaintiff in the amount of $90,064.77.

The court accepted the verdict and the defendant moved for a judgment based on the pleadings and the amount of the jury's verdict. The defendant also filed a motion to open the evidence to submit a copy of the insurance policy to the court, which was granted. The court rendered judgment in favor of the defendant. Because of the $100,000 recovery by the plaintiff, the court concluded that he already had received compensation in excess of the value of his damages and was, therefore, not entitled to underinsured motorist benefits. This appeal followed.

I

The plaintiff's first claim is that the trial court improperly rendered judgment in favor of the defendant. Specifically, the plaintiff argues that because the defendant failed to request that the jury's verdict be set aside or that a remittitur be granted, there was no basis for the court's decision. Further, the plaintiff argues that the court's decision relied on information that was not before the jury and that this usurped the fact-finding function of the jury.

The defendant argues that the trial court properly rendered judgment in its favor because (1) the plaintiff failed to sustain his burden of proving that he was entitled to recover more than the $100,000 he had already received from the tortfeasor, (2) the judge properly assigned to the jury the fact-finding function of determining the amount of the plaintiff's damages, and (3) a judgment in favor of the plaintiff in the amount of

the jury verdict would have resulted in an impermissible double recovery. We agree with the defendant.

This case involves an attempt by the plaintiff to recover underinsured motorist benefits from the defendant. General Statutes § 38a-336 (b) "requires that an insurer pay its insured up to the limits of the policy's [underinsured] motorist coverage after the liability limits of all other applicable insurance policies have been exhausted by payment of judgments or settlements. This statutory subsection, together with the other provisions of the [underinsured] motorist statute, § 38a-336, reflects the public policy of this state to afford a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the [underinsured] motorist had maintained an adequate policy of liability insurance. *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982)." *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 800–801, 646 A.2d 806 (1994).

The purpose of underinsured motorist coverage "is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 305, 673 A.2d 474 (1996), quoting *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 398, 579 A.2d 525 (1990). It has also been stated that "the purpose of underinsured motorist insurance is to place the insured in the *same* position as, but *no better* position than, the insured would have been had the underinsured tortfeasor been fully insured." (Emphasis in original.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997). " '[U]nderinsured motorist protection is not intended to provide a greater recovery than would have

been available from the tortfeasor . . . .' " *Florestal* v. *Government Employees Ins. Co.*, supra, 310, quoting *Smith* v. *Safeco Ins. Co. of America*, supra, 225 Conn. 573.

General Statutes § 38a-335 (c), which sets forth minimum policy provisions for automobile liability policies, provides in part that "[i]n no event shall any person be entitled to receive duplicate payments for the same element of loss." "It is a time-honored rule that an injured party is entitled to full recovery only once for the harm suffered. *Peck* v. *Jacquemin*, 196 Conn. 53, 70 n.19, 491 A.2d 1043 (1985)." *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 775, 621 A.2d 262 (1993). "The social policy behind this concept is that it is a waste of society's economic resources to do *more* than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste. See, e.g., 4 G. Palmer, Law of Restitution (1978 & Sup. 1997) § 23.15, p. 437." (Emphasis in original.) *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 23–24. "An insured may not recover double payment of damages under overlapping insurance coverage." *Buell* v. *American Universal Ins. Co.*, supra, 775.

Prior to trial, the court granted the defendant's motion in limine and thereby excluded from the jury evidence of the insurance policy, its limits and the plaintiff's recovery from the tortfeasor. In *Bennett* v. *Automobile Ins. Co. of Hartford*, supra, 230 Conn. 802 n.15, citing with approval *Bennett* v. *Automobile Ins. Co. of Hartford*, 32 Conn. App. 617, 626–27, 630 A.2d 149 (1993) (*Lavery, J.*, dissenting), rev'd, 230 Conn. 795, 646 A.2d 806 (1994), it was noted that in an underinsured motorist case " '[t]he jury's only task [is] to assign the appropriate level of damages arising from the [underinsured] motorist's tort. Because the contractual limits [do] not prove or disprove the plaintiffs' damages, they

[are] irrelevant.' " The *Bennett* court also stated that "henceforth an insurer should raise issues of policy limitation, even when undisputed, by special defense. When a jury determination of the facts raised by special defense is not necessary, the special defense will not be submitted to the jury but, rather, will be resolved by the trial court prior to the rendering of judgment. Compliance with this procedure will place the trial court and the opposing party on proper notice of the policy limitation issue so that it may be resolved in accordance with § 38a-336 (b)." *Bennett* v. *Automobile Ins. Co. of Hartford*, supra, 230 Conn. 806. In addition, Practice Book (1998 Rev.) § 10-79[1] sets forth nearly identical language. Thus, the result of the trial court's granting of the motion in limine was to establish that the sole function of the jury in this case was to decide the fair, just and reasonable damages that the plaintiff was entitled to recover.

The plaintiff acknowledged that the fact-finding function of the jury was limited to determining damages in his request to charge, submitted prior to the beginning of trial and prior to the court's ruling on the motion in limine, when he sought a charge that the jury's role was to determine fair, just and reasonable damages. During his closing argument, the plaintiff argued to the jury that its role was to determine the fair, just and reasonable damages. Finally, the court's instruction to the jury reaffirmed that the jury's only function was to decide fair, just and reasonable compensation for the plaintiff.[2]

---

[1] Practice Book (1998 Rev.) § 10-79 provides: "An insurer should raise issues of monetary policy limits, or credits for payments by or on behalf of third party tortfeasors, by special defense. When a jury determination of the facts raised by special defense is not necessary, the special defense shall not be submitted to the jury but, rather, shall be resolved by the trial court prior to the rendering of judgment."

[2] The trial court instructed in relevant part: "In an uninsured-underinsured motorist action where the plaintiff claims that he was injured as a result of the negligence, as in this case, of Helen Super, the amount of damages

In this case, had the trial court rendered judgment in favor of the plaintiff in the amount of the jury verdict, the result would have been an impermissible double recovery by the plaintiff in violation of law and public policy. Furthermore, in the plaintiff's amended complaint, he alleged that he is "entitled to recover his full damages in excess of the $100,000, which he received as the remaining policy limits from Helen Super, up to the total available . . . coverage which is in the amount of $200,000." Because the jury returned a verdict of less than the plaintiff's $100,000 recovery, the plaintiff failed to satisfy his burden to prove this allegation and, therefore, was not entitled to damages in excess of the $100,000 recovery. We conclude that the trial court properly rendered judgment in favor of the defendant.

## II

The plaintiff's second claim is that the trial court improperly granted the defendant's motion in limine. Specifically, the plaintiff argues that by granting the motion in limine the trial court prevented the jury from considering the insurance policy or the amount of recovery from the tortfeasor and that this violated his constitutional right to have the jury determine issues of fact. We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . The trial

---

to be recovered from [the defendant] is the amount of money which the plaintiff would have been able to recover against Helen Super if she had had sufficient insurance coverage to afford him fair, just and reasonable compensation for the injuries and damages suffered by him.

"You, the jury, are not to concern yourselves with what, if any, compensation [the plaintiff] received from Helen Super or her insurance carrier. Your task, should you find in [the plaintiff's] favor, is to award him compensation from dollar one to such an amount as you would feel to be fair, just and reasonable in order to fully compensate him from his injuries and damages. Your following this instruction will ensure fairness, as it is the responsibility of the judge under our law, should your verdict be for [the plaintiff], to deduct the amount of any payment previously received by him from the amount of your verdict."

court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez-Rivera*, 48 Conn. App. 784, 794, 713 A.2d 847 (1998).

The plaintiff argues that the trial court granted the defendant's motion in limine on the basis of a misinterpretation of *Bennett* v. *Automobile Ins. Co. of Hartford*, supra, 230 Conn. 806. The plaintiff attempts to distinguish *Bennett* from this case.

"In many cases, the liability of the uninsured or underinsured tortfeasor is admitted; and the case becomes, in reality, a hearing in damages. The inquiry of the jury then becomes what amount represents fair, just and reasonable damages in accordance with Connecticut law for those elements of damage which have been established in the case. Counsel representing claimants will frequently assert the position that the entire insurance policy, including the policy coverage limits and the premiums charged and paid, should be admissible since the claim is essentially based upon a contract of insurance; and, therefore, all provisions of the contract should be placed before the jury for its consideration. That is, the jury or finder of fact should be aware of the amount of [underinsured] motorist coverage purchased by the claimant, the premiums paid for such coverage, and the provisions of the policy which the claimant contends are violated by the insurer's refusal to pay. However, the fundamental factual issue for resolution by the finder of fact is the amount of damages or liability if that is contested. Once that determination has been made, the issues of credits and set-offs to be applied are legal determinations to be made by the court or by agreement of the parties.

"Other jurisdictions which have addressed this issue have concluded that in uninsured and underinsured motorist cases, where the policy provisions themselves are not an issue, that it is error to admit into evidence the [underinsured] motorist policy limits and to allow counsel to argue an entitlement to recover those insurance policy proceeds. *Auto-Owners Insurance Co.* v. *Dewberry*, 383 So. 2d 1109 (Fla. App. 1980); *Harvey* v. *Mitchell*, 522 So. 2d 771 (Ala. 1988); *Jones* v. *Lingenfelder*, 537 So. 2d 1275 (La. App. 1989); *Ponder* v. *Groendyke Transport, Inc.*, 454 So. 2d 823 (La. App.), writ denied, 457 So. 2d 1195, 1198 (La. 1984) . . . ." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 7.9.3, pp. 273–74. "Connecticut courts have recognized that prejudice may result from the jury's consideration of the policy's undisputed [underinsured] motorist limits. Accordingly, such limits should not be considered by the jury but should be applied by the court to reduce a jury verdict in excess of the policy limits so that the judgment complies with the terms of the policy." Id. (1997 Cum. Sup. IV), p. S-189. In *Bennett* v. *Automobile Ins. Co. of Hartford*, supra, 230 Conn. 803–804 n.17, our Supreme Court also noted that other jurisdictions[3] have acknowledged "the prejudice that may result from the jury's consideration of the policy's undisputed [underinsured] motorist limits," and have concluded that the jury should not consider such evidence and that the trial court should reduce the jury verdict to make it conform with the terms of the policy.

We conclude that the trial court did not abuse its discretion in granting the defendant's motion in limine. The trial court properly granted the motion in limine on the basis of *Bennett* and, therefore, properly structured

---

[3] See, e.g., *Alfa Mutual Ins. Co.* v. *Moreland*, 589 So. 2d 169 (Ala. 1991); *Allstate Ins. Co.* v. *Miller*, 315 Md. 182, 553 A.2d 1268 (1989); see also *Price* v. *Hart*, 166 Wis. 2d 182, 480 N.W.2d 249 (App. 1991).

this underinsured motorist case to conform to the procedures established by our Supreme Court in *Bennett*. Furthermore, the trial court did not violate the plaintiff's constitutional right to have issues of fact decided by the jury. The only issue properly before the jury in this case concerned a determination of the appropriate level of damages arising from the underinsured motorist's tort. Evidence of the insurance contract or the recovery from the tortfeasor was irrelevant to the jury's determination of damages.

## III

The plaintiff next claims that the trial court improperly opened the evidence to allow the defendant to introduce the insurance policy after accepting the jury's verdict. We disagree.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. *State* v. *Levy*, 103 Conn. 138, 145, 130 Atl. 96 [1925]; *State* v. *Chapman*, 103 Conn. 453, 479, 130 Atl. 899 [1925]; *King* v. *Spencer*, 115 Conn. 201, 203, 161 Atl. 103 [1932]; *State* v. *Swift*, 125 Conn. 399, 405, 6 Atl. (2d) 359 [1939]. *Hauser* v. *Fairfield*, 126 Conn. 240, 242, 10 A.2d 689 [1940]. In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided. . . . *State* v. *Holmquist*, 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977)." (Internal quotation marks omitted.) *Doe* v. *Doe*, 244 Conn. 403, 421, 710 A.2d 1297 (1998). "Such a reopening should not be permitted if it would result in

substantial prejudice to a party. See *Poly-Pak Corporation of America* v. *Barrett*, 1 Conn. App. 99, 104, 468 A.2d 1260 (1983)." *Wood* v. *Bridgeport*, 216 Conn. 604, 606, 583 A.2d 124 (1990).

The defendant moved to open the evidence in order to offer as an exhibit to the court the applicable insurance policy pursuant to which the plaintiff claimed he was entitled to recover underinsured motorist benefits. The trial court granted the motion, noting in its memorandum of decision that "[a]lthough the court granted said motion the court did not feel that a motion to reopen was necessary as the court had refrained from entering judgment on the verdict."

"The trial court has discretion to allow an insurance company to submit proof of specific policy limits after the verdict and to enter judgment limiting the insurer's liability to the amount of coverage. *Price* [v. *Hart*, 166 Wis. 2d 182, 189, 480 N.W.2d 249 (App. 1991)]." *Hoff* v. *Wedin*, 170 Wis. 2d 443, 451, 489 N.W.2d 646 (App. 1992).

In the plaintiff's amended complaint, he alleged the policy limits pertaining to the underinsured motorist coverage involved in this case. Further, the plaintiff was well aware that the trial court would make the appropriate adjustments necessary to the verdict after it was rendered. The plaintiff was not prejudiced by the trial court's receipt into evidence of the insurance policy in question. Allowing the policy into evidence placed the plaintiff in the same position he would have been in had the policy been introduced before the defendant rested its case. The policy would not have been submitted to the jury because, as already stated, the policy limits were irrelevant to the jury's task in this case and because the policy presented an issue of law for the court. *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 30, 688 A.2d 319 (1997).

We conclude that the trial court did not abuse its discretion and acted within its authority in allowing the defendant to submit the insurance policy into evidence after receiving the jury's verdict.

## IV

The plaintiff's fourth claim is that the trial court improperly interpreted the insurance policy. Specifically, the plaintiff argues that the trial court ignored the insurance policy's endorsement to conclude that the plaintiff is not legally entitled to recover damages. The defendant argues that the plaintiff has failed to recognize that the policy language in question is nearly identical to that set forth in the state insurance regulations and that the endorsement clearly provides that the plaintiff was not entitled to receive duplicate payments for the same element of loss. We agree with the defendant.

" 'An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . [C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo.' " Id., 29–30.

An insurance policy shall provide all statutorily mandated provisions. General Statutes § 38a-338.[4] "It is well settled that an insurance contract must be read to include provisions that the law requires be included and to exclude provisions that the law prohibits. . . .

[4] General Statutes § 38a-338 provides: "Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38a-334 to 38a-336a, inclusive, 38a-338 and 38a-340 apply shall be deemed to provide insurance under such coverages in accordance with such regulations. Policies affording medical payments coverage to which the provisions of said sections apply shall be deemed to provide insurance under such coverage in accordance with such regulations."

'Unless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein.' " (Citation omitted.) *Harlach* v. *Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 191–92, 602 A.2d 1007 (1992). "The regulations subsequently adopted by the insurance commissioner to implement the statutory provisions concerning uninsured motorist coverage have the force of statute." *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 449, 370 A.2d 1006 (1976).[5]

Section 38a-334-6 (d) of the Regulations of Connecticut State Agencies provides: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury . . . ." This provision has been held to permit an insurer who provides underinsured motorist coverage to limit its liability by deducting amounts paid personally by the tortfeasor and settlement payments from the damages owed to its insured. *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 30, 610 A.2d 1292 (1992); *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 775.

The plaintiff argues that the language of an endorsement of the insurance policy, replacing the original limit of liability provisions in their entirety, only discusses the reduction of underinsured motorist coverage by the tortfeasor recovery and does not seek a reduction in damages. The plaintiff's argument is without merit. The

---

[5] General Statutes § 38a-334 (a) authorizes the insurance commissioner to adopt regulations concerning the minimum provisions to be included in automobile liability insurance policies.

plaintiff ignores the clear and unambiguous language of the contract, which states: "The limit of liability shall be reduced by all sums: (1) Paid, because of the bodily injury, by or on behalf of persons or organizations who may be legally responsible. . . ." The endorsement's language tracks the language of § 38a-334-6 (d) (1) of the Regulations of Connecticut State Agencies. Furthermore, the endorsement also states "[h]owever, in no event shall anyone be entitled to receive duplicative payments for the same element of loss." In *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 775, our Supreme Court interpreted almost verbatim policy language and concluded that "[i]n light of the legislative intent to provide a certain minimum level of protection, but to prevent double recovery on the part of the insured, we conclude that an insurer may limit its liability by deducting a settlement payment from the damages owed to its insured. To hold otherwise would provide the insured a windfall by permitting duplicate payments for the same injury."

The jury verdict in this case would have resulted in a duplicate payment for the same injuries. We conclude that the trial court properly interpreted the insurance policy and its endorsement and, therefore, correctly rendered judgment in favor of the defendant.

V

The plaintiff's final claim is that the trial court improperly precluded expert testimony concerning his risk of future surgery. Specifically, the plaintiff argues that the trial court's ruling was both inconsistent and improper, and prejudicial because it denied him the opportunity to obtain adequate future medical compensation.

The following additional facts are necessary to resolve this issue. At trial, the plaintiff's treating physician, Kanada Sena, testified about the plaintiff's medical treatment for the injuries he suffered as a result of the

automobile accident. Sena testified that within reasonable medical probability, the plaintiff had sustained a 10 percent permanent partial disability to the cervical spine due to multiple herniated discs and a 5 percent permanent partial disability to the right upper extremity due to the presence of sensory involvement of the right arm. In addition, Sena testified that within reasonable medical probability, the plaintiff's condition will get worse with time. The trial court permitted this testimony as well as testimony concerning future treatment, excluding surgery and medications. When the plaintiff attempted to ask Sena what, within reasonable medical probability, the risk of future surgery is, the defendant objected.

The defendant argued that Sena had not been disclosed as an expert who would give any opinion with respect to the possibility of surgery in the future and that there was no proper foundation. The plaintiff made an offer of proof, asking Sena to state with reasonable medical probability what the percentage of risk is that the plaintiff will need future surgery. Sena answered that the risk was 15 to 20 percent. The trial court concluded that Sena could not testify with respect to a reasonable likelihood of surgery because it believed that surgery was not an issue in this case in view of the complaint and reports that were turned over to the defendant prior to trial.[6]

"In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158,

---

[6] The trial court stated: "I'm going to hold to my original decision, and that is [that] I'm not going to allow the doctor to testify with respect to a reasonable likelihood of surgery, since—or even a 15 or 20 percent chance of surgery—because I don't believe that surgery is in this case in view of the complaint or any of the reports that were turned over to counsel prior to this trial. So, that's my decision."

175, 708 A.2d 949 (1998). "Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992); *Russell* v. *Dean Witter Reynolds, Inc.*, 200 Conn. 172, 191–92, 510 A.2d 972 (1986)." *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 193, 646 A.2d 195 (1994). One of the circumstances identified by our Supreme Court where the prejudicial effect of evidence may outweigh its probative value is "where the [party against whom the evidence has been offered], having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) Id.

Practice Book § 220 (D), now Practice Book (1998 Rev.) § 13-4 (1) (A), mandates that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ." "[Section] 220 (D) is intended to furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case." *Rosenberg* v. *Castaneda*, 38 Conn. App. 628, 632, 662 A.2d 1308 (1995). The rules of discovery are designed to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958); *Knock* v. *Knock*, 224 Conn. 776, 782, 621 A.2d 267 (1993); *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 106, 476 A.2d 1074 (1984).

In this case, the trial court found that the plaintiff's complaint, his disclosure pursuant to § 220 (D), and

his medical reports failed to disclose any possibility of future surgery. The trial court stated: "I do think if the defendant is going to be exposed to a claim for surgery or expenses associated with surgery that there should be some advanced warning given the defendant with respect to the fact that he is going to be facing such a claim, and in this case there has been none. And for that reason I am going to rule it out."

The plaintiff's complaint alleges that "the plaintiff incurred expense for medical care and attention and may continue to do so." The medical reports of Sena concerning the plaintiff do not indicate a risk of future surgery. In the most recent of the medical reports, dated November 19, 1992, Sena stated that "[c]onsidering the date of the accident [April 25, 1992] and the date of this examination, it is my opinion that maximum medical improvement has occurred . . . ." Further, in response to the defendant's interrogatories, the plaintiff responded that Sena would testify on the subject matter of general medicine and neurology, and that the substance of his testimony would concern the care and treatment, causation, diagnosis, prognosis, permanency and costs of future medical care.[7]

---

[7] The plaintiff responded as follows:

"36. For each witness identified in response to Interrogatory No. 35, state:

a. the subject matter on which each expert is expected to testify:

ANSWER: Dr. Sena—general medicine and neurology

   Dr. Eisenberg—general medicine and orthopedics

   Dr. Boone—general medicine and orthopedics

   Police Officer—as to the cause of the accident

b. the substance of the facts and opinions to which each expert is expected to testify;

ANSWER: The medical experts may testify as to care and treatment, causation, diagnosis, prognosis, permanency and costs of future medical care. The police officer may testify as to the circumstances surrounding the accident and its causes.

c. a summary of the grounds for each opinion of each expert witness expected to testify.

ANSWER: The medical providers will testify as to their examination and treatment of the plaintiff, review of medical records and their experience and education as medical providers. The police officer will testify as to his/her examination of the accident scene and his/her experience."

The court did not abuse its discretion in concluding that the consequences of the plaintiff's failure fully and fairly to disclose, despite his being given ample opportunity to do so, should fall upon the plaintiff rather than upon the defendant. To hold otherwise would unfairly deny the defendant, under the circumstances of this case, the opportunity to prepare for or to challenge the proposed testimony concerning the future risk of surgery. See *Sturdivant* v. *Yale-New Haven Hospital*, supra, 2 Conn. App. 108.

On the basis of our review of the record, transcripts and evidence, we conclude that the trial court did not abuse its discretion in prohibiting Sena from testifying about the plaintiff's increased risk of future surgery. Our review leads us to the conclusion that the trial court could reasonably have concluded that the plaintiff failed to disclose to the defendant in a proper manner that he was going to present testimony at trial concerning an increased risk of future surgery. The plaintiff's disclosure in this case failed to disclose to the defendant the issue of increased risk of future surgery, resulting in unfair surprise at trial and the denial of an opportunity to prepare for or to challenge this testimony on the part of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.