[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Molly Schilling, a/k/a Molly McLaughlin, individually and in her capacity as the administratrix of the estate of Colin Schilling,[1] commenced this action against the defendants, Safeco InsuranceCompany of Illinois and Safeco Insurance Company of America, seeking to recover underinsured motorist benefits under an insurance policy issued to her by the defendants. Before this court is the defendants' motion (#117) for summary judgment.
A summary of the pertinent factual and procedural history of this action follows. The plaintiff, a resident of Connecticut, alleged in her complaint that: (1)
(1) the defendants are corporations authorized to transact business in Connecticut and to issue insurance policies providing uninsured and underinsured motorist coverage;
(2) the defendants issued to the plaintiff, in her individual capacity, an automobile insurance policy (the policy), wherein the defendants agreed to insure the plaintiff against loss from certain risks, including damages resulting from involvement in a collision caused by an uninsured or underinsured motorist; and (3) the policy has an underinsured limit of $500,000.
On or about October 5, 1997, while the policy was in full force and effect, the plaintiff's decedent, her son, Colin Schilling, was a passenger in a vehicle owned by Marianne Manca and operated by her son, William W. Marden, IV, on a public highway in Westport. Marden lost control of the vehicle, ran off the roadway and struck a tree head on. As a result of the negligence and carelessness of Marden, the plaintiff's decedent died on October 7, 1997.
Allstate Insurance Company (Allstate) paid a total of $1,200,000 to the plaintiff individually and to the decedent's estate, which was the entire amount of automobile liability coverage available to Marden, and thus, the plaintiff has exhausted the automobile liability insurance coverage available to the tortfeasor. The plaintiff claims that Marden is underinsured for the death and damages he caused her son to endure.
In their answer, the defendants deny that the plaintiff has exhausted the automobile liability insurance coverage available to Marden by virtue of payments made by Allstate to the decedent's estate. Additionally, the defendants assert a special defense contending that when an underinsured CT Page 3018 motorist claim is presented, the limit of coverage or damages must be reduced by all payments made on behalf of Marden and/or Manca.
In response to the defendants' requests for admissions, the plaintiff admits[2] that: (1) on October 5, 1997, Marden was covered by liability insurance in the amount of $100,000, under a policy issued by Allstate; (2) on October 5, 1997, Marden was also covered under a liability umbrella policy in the amount of $1,000,000; (3) on the date of the accident, the defendants' policy with the plaintiff provided for $500,000 of uninsured/underinsured motorist protection; and (4) the decedent's estate received an additional $550,000, pursuant to an Allstate umbrella policy.
The defendants now move for summary judgment, Practice Book §17-49, on the grounds that they do not owe underinsured motorist payments to the plaintiff because: (1) the amount of monies received by the plaintiff from or on behalf of the tortfeasor, Marden, reduces the $500,000 coverage limit of the defendants to zero; and/or (2) the amount of insurance available to Marden was greater than the underinsured motorist limits of the plaintiff's policy, i.e., $500,000.
A motion for summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mailer of law." (Internal quotation marks omitted.) Milesv. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a mailer of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "A party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Maffucciv. Royal Park Ltd. Partnership, 243 Conn. 552, 554, 707 A.2d 15 (1998).
The defendants assert that the policy they issued to the plaintiff provides for a limit or maximum of $500,000 of underinsured motorist coverage, and furthermore, that the policy provides that any amounts to be paid by the defendants thereunder shall be reduced by all sums paid by or on behalf of persons who may be legally responsible for the injuries claimed by the insured.[3] The defendants contend that payments in CT Page 3019 excess of $500,000 have already been made to the plaintiff by Allstate, by or on behalf of persons who may have been legally responsible for the injuries claimed by the insured.[4] Therefore, the defendants argue that when the $500,000 worth of underinsured motorist coverage is reduced by the payments made by Allstate, by or on behalf of persons responsible for the injuries, the policy does not permit any further or additional recovery by the plaintiff. Thus, the defendants conclude that summary judgment should be granted in their favor.
In response, the plaintiff argues that not all of the payments made by Allstate should be included in determining whether underinsured motorist benefits are available to the plaintiff through her policy with the defendants. The plaintiff contends that only payments made under automobile liability policies may be considered for purposes of determining whether underinsured motorist coverage is available. The plaintiff asserts that excess or umbrella policies are not automobile liability policies as such, and, therefore, payments made under that type of policy may not be considered for purposes of determining whether underinsured motorist coverage is available. The plaintiff argues that only $200,000 worth of automobile liability coverage was provided by Allstate, an amount that is less than the $500,000 limit of underinsured motorist coverage available under the defendants' policy. Therefore, the plaintiff concludes that the defendants' motion for summary judgment should be denied, as the defendants failed to demonstrate that they are entitled to judgment as a matter of law.
An exhibit submitted by the plaintiff reveals that prior to the commencement of this action, the plaintiff herein, in her capacity as administratrix for the estate of Colin Schilling, deceased, applied to the Probate Court for the district of Westport, seeking authority to execute a general release and settlement agreement and to thereby settle in favor of the estate certain claims against Marden and his parents, and their insurer, Allstate.[5] On September 30, 1999, the Probate Court, O'Grady, J., approved a settlement agreement pursuant to which the plaintiff, in her dual capacities as an individual and as administrator of the decedent's estate,[6] was to receive payments from Allstate in an aggregate sum of $1,200,000.[7]
According to the terms of the settlement agreement, the plaintiff received a total of $200,000 from Allstate auto policies, with $150,000 of that amount received by her in her personal capacity ($100,000 from settlement of her individual claims against Manca and $50,000 from settlement of her individual claims against Marden, Marden's father and his stepmother), and with the remaining $50,000 of that amount received by her in her capacity as the administratrix of the decedent's estate, from the settlement of the estate's claims against Marden, his father and CT Page 3020 his stepmother. Furthermore, according to the terms of the settlement agreement, the plaintiff received a total of $1,000,000 from Allstateumbrella policies, with $450,000 of that amount received by her in her personal capacity ($275,000 from settlement of her individual claims against Marden and $175,000 from settlement of her individual claims against Manca) and with the remaining $550,000 of that amount received by her in her capacity as the administratrix of the decedent's estate, consisting of $275,000 from settlement of the estate's claims against Marden and $275,000 from settlement of the estate's claims against Manca.
This court concludes that amounts paid under excess or umbrella policies are to be included in the determination of whether underinsured motorist benefits are available. Stated differently, this court finds that in view of the amounts paid to the plaintiff under Allstate's excess or umbrella policies, the underinsured motorist coverage of the defendants in the amount of $500,000 is effectively reduced to zero.
General Statutes § 38a-336 (b) provides, in relevant part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements but in no event shallthe total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsuredmotorist coverage." (Emphasis added.)
Moreover, General Statutes § 38a-336 (d) provides, in relevant part: "If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be primary and any coverage for which such person is a named insured shall be secondary. All other applicable policies shall be excess. The total amount of uninsured and underinsuredmotorist coverage recoverable is limited to the highest amountrecoverable under the primary policy, the secondary policy or any one ofthe excess policies." (Emphasis added.)
In addition, section 38a-334-6 of the Regulations of Connecticut State Agencies, provides in pertinent part: "(d) Limits of Liability. (1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section14-112 of the General Statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by CT Page 3021 or on behalf of any person responsible for the injury; . . . (3) Any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."
Furthermore, three cases, while not exactly on point, offer guidance as to the proper disposition of this motion for summary judgment. In Buellv. American Universal Insurance Company, 224 Conn. 766, 773-75,621 A.2d 262 (1993), our Supreme Court held that an underinsured motorist carrier was entitled to deduct the amount paid to the plaintiff by the defendant on behalf of a tortfeasor who was not a defendant in the case when calculating the total damages it owed to its insured. The court held that the payment had a dual purpose: (1) to compensate the victim for her injuries and (2) to avoid litigation between the two parties. Therefore, the court concluded that in order to prevent the plaintiff from receiving compensation twice for the same injuries, the underinsured motorist coverage carrier was entitled to deduct settlement payments made to the plaintiff on behalf of tortfeasors when arriving at the damages it owed the insured.
In Fahey v. Safeco Ins. Co. of America, 49 Conn. App. 306, 309-312,714 A.2d 686 (1998), the plaintiff appealed from a trial court judgment in favor of his automobile liability insurance carrier in which he sought recovery of underinsured motorist benefits. The plaintiff was injured in a motor vehicle accident caused by a third party and settled for $100,000, the full extent of the automobile insurance coverage, and then sought to recover underinsured motorist benefits from the defendant, her insurer. Since the defendant admitted liability of the tortfeasor, only the issue of damages was tried to the jury, which returned a plaintiff's verdict in the amount of $90,069. Since the plaintiff had already recovered more than the value of his damages, the trial court concluded he was not entitled to underinsured motorist coverage. The Appellate Court upheld the trial court's judgment concluding that because the jury verdict was less than the amount the plaintiff had already recovered, the plaintiff failed to establish that his damages were in excess of the $100,000 he had already recovered.
In Hanz v. Dragone Enterprises, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 350501 (July 27, 2000, Melville, J.) (27 Conn.L.Rptr. 547), the court held that, as a matter of law, summary judgment should be granted, since plaintiff's insurer could, "as a matter of law, reduce its liability limit by any amount paid to its insured by a responsible party, whether that responsible party is the insured tortfeasor or the uninsured tortfeasor."
In light of the foregoing, summary judgment enters in favor of the defendants because the uninsured/underinsured coverage issued by the CT Page 3022 defendants of a maximum of $500,000 is reduced to zero because of the plaintiffs receipt of an aggregate amount of $1,200,000, for her individual damages and for those of her decedent.
So Ordered.
Dated at Stamford, Connecticut, this 13th day of March, 2002.
William B. Lewis, Judge, T.R.