LUDWIG ROSENBERG *v.* HECTOR CASTANEDA ET AL.
(13213)

O'CONNELL, LAVERY and LANDAU, Js.

Argued April 27—decision released August 1, 1995

*John Serrano,* for the appellants-appellees (named defendant et al.).

*Louis J. Bromberg,* for the appellee-appellant (plaintiff).

O'CONNELL, J. The plaintiff was injured in a fall on the defendants' property. The defendants[1] appeal from the judgment for the plaintiff rendered after a trial to the court. They claim that (1) the evidence did not support an award of damages to the plaintiff and (2) even if damages were warranted, the amount awarded was excessive.

The plaintiff cross appealed, claiming that the trial court improperly allowed the defendants untimely to amend their answer to include a special defense of con-

---

[1] Judgment was rendered against the defendants Hector Castaneda, Rosa Castaneda and Katherine Castaneda, and in favor of the defendant Fortunetta Castaneda. As used in this opinion, the defendant refers only to the three Castanedas against whom judgment was rendered.

tributory negligence. We reverse the judgment on the defendants' appeal and affirm the trial court's action on the plaintiff's cross appeal.

The court could reasonably have found the following facts. The defendants own a three-family residence in Bristol. The plaintiff, a salesman, was calling on a tenant in the defendants' building when he slipped on ice-covered steps.

I

We consider the second claim first because it is dispositive of the appeal. The defendants argue that, even if a judgment against them were warranted, the trial court awarded excessive damages because it relied on improperly admitted evidence in finding that the plaintiff sustained permanent partial disability. The genesis of the issue is a signed medical report from Steven Selden, an orthopedist, in which he expressed his opinion that the plaintiff had sustained a 30 percent permanent partial impairment of the right shoulder. No other evidence of the degree of any permanent partial disability was introduced, and the trial court expressly found that the plaintiff had sustained a 30 percent permanent partial impairment of his right shoulder.

The defendants argue that Selden's report should not have been admitted into evidence because of the plaintiff's failure to comply with Practice Book § 220 (D). Section 220 (D) mandates that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such

expert shall not testify except in the discretion of the court for good cause shown."

Because § 220 (D) refers to "experts," we turn first to the question of whether Selden, as a treating physician, comes within the ambit of the rule. This is not a question of first impression. We have held on several occasions that the disclosure requirements of § 220 (D) apply to treating physicians as well as to independent experts. *Gemme* v. *Goldberg*, 31 Conn. App. 527, 535, 626 A.2d 318 (1993); *Bank of Boston Connecticut* v. *Ciarleglio*, 26 Conn. App. 503, 509, 604 A.2d 359, cert. denied, 221 Conn. 922, 608 A.2d 685 (1992); *Yale University School of Medicine* v. *McCarthy*, 26 Conn. App. 497, 500, 602 A.2d 1040 (1992).

The plaintiff argues that because his medical evidence was submitted by way of a written report, rather than through a live expert witness on the witness stand, § 220 (D) does not apply. He claims that the medical report was not medical testimony but was a business entry and thus admissible under General Statutes § 52-174 (b).[2] He argues that the statute supersedes the rules of practice insofar as medical reports are concerned. We do not agree.

The statute and the rule of practice serve two separate and distinct purposes. The difficulty and expense of getting physicians to come to court and testify is not unknown to most practitioners. Although live testimony is generally more effective than a written report, the latter is understandably superior to no medical evidence

---

[2] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death . . . any party offering in evidence a signed report . . . of any treating physician . . . may have the report . . . admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician . . . and that the report . . . [was] made in the ordinary course of business. . . ."

whatsoever. The statute serves the purpose of getting medical evidence, *which is otherwise admissible*, before the jury in the absence of the treating physician. See *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 799, 595 A.2d 839 (1991). The plaintiff cites no authority, nor are we aware of any, that suggests that § 52-174 (b) was intended to exempt a party from any other prerequisites of admissibility.

On the other hand, § 220 (D) is intended to furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case. In this regard, we point out the requirement that the mandated material must be furnished sixty days from the date the case is claimed to the trial list. It is readily apparent that introducing a medical report at the time of trial is of no value to a defendant in preparation for trial. "The rules of discovery are designed to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." (Internal quotation marks omitted.) *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 106, 476 A.2d 1074 (1984).

The plaintiff also argues that Selden's report was admissible because it was disclosed as part of an offer of proof for a prejudgment remedy. This contention ignores the holding in *Caccavale* v. *Hospital of St. Raphael*, 14 Conn. App. 504, 506–508, 541 A.2d 893, cert. denied, 208 Conn. 812, 545 A.2d 1107 (1983), that merely supplying opposing counsel with an expert's report does not satisfy § 220 (D).

Although the trial court may preclude a party from introducing expert testimony because of failure to comply with § 220 (D), such failure is not necessarily fatal. The trial court has discretion "for good cause shown" to allow expert testimony even when there has been

no § 220 (D) compliance. In the present case, the plaintiff claims that he had no duty to comply with § 220 (D), and, accordingly, made no effort to establish the required good cause on which the trial court could have exercised its discretion and allowed Selden's report into evidence. In view of the complete absence of a showing of good cause, the trial court abused its discretion in admitting Selden's report[3] into evidence.

The plaintiff additionally argues that the defendants did not properly object to the reports at trial. He contends that it was necessary for the defendants to object to a specific portion of Selden's report rather than to the entire report. This is a proper statement of the law in general, as it pertains to exclusion of parts of a record that is otherwise admissible. *Struckman* v. *Burns*, 205 Conn. 542, 556, 534 A.2d 888 (1987). That principle, however, is not applicable where, as in the present case, the report is a substitute for live testimony. Under these circumstances the entire report must be examined, not only certain words or phrases contained therein. Id., 555.

The plaintiff argues that the defendants' claim must fail because they did not ask the trial court to articulate the amount of damages or portion thereof that was linked to its finding of the 30 percent shoulder disability. We do not agree.

It is apparent from the memorandum of decision that the trial court awarded approximately $50,000 (prior to deduction for comparative negligence) for the plaintiff's personal injury. The trial court described the nature of the plaintiff's injuries, the treatment therefor, the limitation of movement, the prolonged and

---

[3] A report of another treating orthopedist was admitted under similar circumstances, but, because only Selden's report refers to the 30 percent permanent partial disability, we have limited our discussion to Selden's report.

painful recovery and that "there is a 30 percent permanent partial impairment of [the plaintiff's] right shoulder."

"Damages in personal injury cases cannot be computed mathematically, nor does the law furnish any precise definite rule for their assessment. The trier of fact must evaluate the elements of an award and place a monetary value on the whole." *Royston* v. *Factor*, 1 Conn. App. 576, 577, 474 A.2d 108, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). "How much of the $50,000 awarded . . . did the [trial court] allocate to the pain and suffering which the plaintiff underwent . . . and how much to the discomfort . . . which will attend the remaining years of his life? These are the imponderables which are often found in awards of damages, whether by judge or jury." *Oborski* v. *New Haven Gas Co.*, 151 Conn. 274, 284, 197 A.2d 73 (1964). Thus, the defendants were not required to file a motion for articulation.

We conclude that there was no admissible medical evidence on which the trial court could find, and include in its award of damages, that the plaintiff sustained a 30 percent permanent partial disability of his right shoulder. Because we cannot know what part this disability evidence played in the total damages awarded by the court, the case must be remanded for a new trial.

## II

Because the defendants' claim concerning the admission of Selden's report requires a remand for a new trial, we do not reach their claim concerning liability for the plaintiff's injuries. Although the reasons for reversal relate solely to damages, "[t]he decision to retain the jury verdict on the issue of liability and order a rehearing to determine only the issue of damages should never be made unless the court can *clearly* see that this is the way of doing justice in [a] case." (Empha-

sis in original; internal quotation marks omitted.) *Fazio* v. *Brown*, 209 Conn. 450, 455, 551 A.2d 1227 (1988). "As a rule, the issues [of liability and damages] are interwoven, and may not be separated without injustice to one of the parties." *Murray* v. *Krenz*, 94 Conn. 503, 508, 109 A. 859 (1920).

## III

The plaintiff cross appeals, claiming that the trial court abused its discretion in allowing the defendants to amend their answer during the course of the trial to include a special defense of contributory-comparative negligence.

The trial court has wide discretion in granting or denying amendments before, during, or after trial. Belated amendments to the pleadings are permitted unless the amendment will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party, or confuse the issues, or unless the delayed amendment is attributable to some misconduct on the part of its proponent. *Falby* v. *Zarembski*, 221 Conn. 14, 24, 602 A.2d 1 (1992); *Hudson Development Co.* v. *East Great Plains Shopping Center, Inc.*, 195 Conn. 60, 67, 485 A.2d 1296 (1985); *Lawson* v. *Godfried*, 181 Conn. 214, 216, 435 A.2d 15 (1980). The trial court's discretion to grant or deny amendments to pleadings extends to the addition of special defenses by the parties. *Howard* v. *Robertson*, 27 Conn. App. 621, 627, 608 A.2d 711 (1992); *Costanzo* v. *Hamden*, 18 Conn. App. 254, 257–58, 557 A.2d 1279 (1989). The decision of a trial court to permit an amendment will not be disturbed unless an abuse of discretion is clearly evident. *DuBose* v. *Carabetta*, 161 Conn. 254, 263, 287 A.2d 357 (1971); *Capitol Restorations Corp.* v. *Construction Services of Bristol, Inc.*, 25 Conn. App. 681, 685, 596 A.2d 927 (1991).

In determining whether the addition of a special defense during the course of the proceedings was appropriate in this case, the trial court found that the plaintiff would suffer no prejudice if the defendants were allowed to amend their answer to include contributory negligence. The plaintiff argues that he was in fact prejudiced by the amendment because, had he known that a contributory negligence defense was being pursued, he would have deposed Roberta Hazelton, who has since died. Hazelton, the tenant on whom the plaintiff was calling at the time he slipped and fell, would have been deposed as to the condition of the premises and the obviousness of the defect.

The lack of Hazelton's testimony at trial, however, did not prejudice the plaintiff. Although Hazelton was a tenant in the defendants' building, she was not an eyewitness to the plaintiff's fall. Her testimony would not have altered the outcome of the plaintiff's case because, on the basis of other evidence, the trial court found that the stairway was icy and slippery on both the date of and two days prior to the plaintiff's fall. Hazelton's testimony regarding the degree of the obviousness of the defective premises would have been merely cumulative—the plaintiff himself testified at trial that he saw the ice on the stairs before stepping onto them.

The addition of the special defense of contributory negligence did not mislead the plaintiff, take unfair advantage of him, or confuse the issues. Accordingly, the trial court did not abuse its discretion in allowing the defendants to amend their answer.

On the defendants' appeal, the judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.