# LINDA SABATASSO *v.* GREGORY HOGAN
## (AC 24942)

Dranginis, Flynn and Gruendel, Js.

Argued February 15—officially released October 11, 2005

*Richard M. Franchi*, for the appellant (plaintiff).

*John T. Maher*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Linda Sabatasso, appeals from the judgment of the trial court, rendered after the jury's verdict in her favor, awarding only nominal damages on her negligence claim against the defendant,

Gregory Hogan. On appeal, the plaintiff claims that the court improperly denied her motions: to set aside the verdict, to set aside the verdict as to damages, in arrest of judgment and for additur. The plaintiff argues that the court improperly (1) reviewed her medical reports prior to the opening of evidence, (2) made comments during her opening statement regarding a lack of evidence as to the possible need for future surgery and refused to let her read the pleadings to the jury in lieu of an opening statement, (3) granted the defendant's motion in limine to preclude signed medical reports after concluding that the plaintiff was not in compliance with Practice Book § 13-4, (4) testified as to facts outside the record concerning the felony conviction of the plaintiff's treating physician and told the jury that there was testimony concerning that conviction and (5) failed to recuse itself from the proceedings. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. As the plaintiff's vehicle was stopped on a southbound entrance ramp to the Wilbur Cross Parkway in New Haven, while attempting to merge with oncoming traffic, her vehicle was struck from behind by the defendant's vehicle. The plaintiff claimed resulting injuries for which she received medical treatment. Her complaint alleged, inter alia, that she had sustained a bulging cervical disc at "C-5/6" and a sprain of the cervical, dorsal and lumbar spine accompanied by paresthesia and other symptoms to the left arm and wrist.

The case was assigned to nonbinding arbitration, pursuant to General Statutes § 52-549u[1] and Practice Book

[1] General Statutes § 52-549u provides in relevant part: "The judges of the Superior Court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. . . ."

§ 23-61,[2] and the arbitrator awarded the plaintiff $31,000 in damages. Thereafter, pursuant to General Statutes § 52-549z,[3] the defendant moved for a trial de novo, and the case was transferred to a judge trial referee for trial. Although the defendant previously had denied negligence, immediately prior to the commencement of the trial, he admitted liability for having caused the collision, and a hearing in damages ensued before the jury, after which, the jury awarded the plaintiff $25 in nominal damages. The plaintiff filed motions to set aside the verdict and to set aside the verdict as to

[2] Practice Book § 23-61 provides: "The court, on its own motion, may refer to an arbitrator any civil action in which, in the discretion of the court, the reasonable expectation of a judgment is less than $50,000, exclusive of interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. An award under this section shall not exceed $50,000, exclusive of legal interest and costs. Any party may petition the court to participate in the arbitration process hereunder."

[3] General Statutes § 52-549z provides: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

"(b) A decision of the arbitrator shall become null and void if an appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

"(c) For the purpose of this section the word 'decision' shall include a decision and judgment rendered pursuant to subsection (a) of section 52-549y, provided the appeal is taken by a party who did not fail to appear at the hearing, and it shall exclude any other decision or judgment rendered pursuant to said section.

"(d) An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days after the deposit of the arbitrator's decision in the United States mail, as evidenced by the postmark, and it shall include a certification that a copy thereof has been served on each counsel of record, to be accomplished in accordance with the rules of court. The decision of the arbitrator shall not be admissible in any proceeding resulting after a claim for a trial de novo or from a setting aside of an award in accordance with section 52-549aa.

"(e) The Superior Court may refer any proceeding resulting from the filing of a demand for a trial de novo under subsection (d) of this section to a judge trial referee without the consent of the parties, and said judge trial referee shall have and exercise the powers of the Superior Court in respect to trial, judgment and appeal in the case, including a judgment of fifty thousand dollars or more."

damages, a motion in arrest of judgment and a motion for additur, all of which were denied by the court. This appeal followed.

## I

We first address the plaintiff's claim that the court acted improperly by demanding copies of her medical records and reading them prior to the making of opening statements. We note that the following colloquy occurred between the plaintiff's counsel and the court:

"The Court: And did you get me copies of the medical reports?

"[The Plaintiff's Counsel]: Should I wait for [the defendant's counsel]?

"The Court: Well, no, I mean that's a request by me.

"[The Plaintiff's Counsel]: Okay, I didn't know what you wanted me to do. I'll do whatever you want.

"The Court: Well, I just wanted copies of the medical reports, that's all, so I can read them."

After reviewing the record, we conclude that this claim was not preserved properly. The plaintiff's counsel not only failed to object to the court's request, but he actually agreed to provide the records to the court prior to the commencement of the hearing without any indication that he thought that the request was improper. We, accordingly, decline to review this claim.

## II

We next address the plaintiff's claims that during her opening statement, the court improperly commented on the lack of evidence concerning the possible need for future surgery and refused to allow her counsel to read the pleadings to the jury. We will address each of these claims separately.

Practice Book § 15-6 provides: "Instead of reading the pleadings, counsel for any party shall be permitted to make a brief opening statement to the jury in jury cases, or in a court case at the discretion of the presiding judge, to apprise the trier in general terms as to the nature of the case being presented for trial. The presiding judge shall have discretion as to the latitude of the statements of counsel." "The trial court is invested with a large discretion with regard to the arguments of counsel and while its action is subject to review and control, we can interfere only in those cases where the discretion was clearly exceeded or abused to the manifest injury of some party." (Internal quotation marks omitted.) *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 365, 805 A.2d 130 (2002).

## A

The plaintiff claims that the court improperly commented on her lack of evidence concerning the possible need for surgery in the future. The defendant argues that the court's comment was proper because it was made in response to his objection that statements being made by counsel were inappropriate as there had been no disclosure related to any expert medical testimony concerning the need for future surgery. Additionally, the defendant argues that even if the court's statement was improper, the plaintiff has failed to demonstrate how she was harmed.

During the plaintiff's opening statement, the following colloquy occurred:

"[The Plaintiff's Counsel]: . . . . There has been no surgery suggested. However, it doesn't mean that she can't get it in the future.

"[The Defendant's Counsel]: Your honor, I'm going to object to that.

"The Court: I don't recall any evidence of that, counselor.

"[The Plaintiff's Counsel]: Your Honor, there hasn't been any evidence yet.

"The Court: All right. Then, we'll eliminate that and the jury's instructed to disregard that comment. Go ahead.

"[The Plaintiff's Counsel]: Thank you."

The plaintiff claims that the court's statement was improper because it was based on the judge's review of the plaintiff's medical records and "facts outside the record . . . ." We disagree with this characterization and conclude that the court's remark was based on the content of the plaintiff's disclosure of expert witnesses and the disclosed expert medical reports, which contained no mention of future surgery. The court simply was sustaining the defendant's objection on the ground that the plaintiff had not made any disclosure concerning expert testimony on the need for future surgery.

Practice Book § 15-6 allows the plaintiff, within the discretion of the court, to make a brief opening statement "to apprise the trier in general terms as to the nature of the case being presented for trial. . . ." Here, although the plaintiff had alleged in her complaint that she "may in the future be obligated to expend and lay out large sums of money for . . . surgical . . . care," her disclosure of expert witnesses and the disclosed medical reports of those experts made absolutely no mention that she may have a need for surgery in the future.

Practice Book § 13-4 (4) mandates that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to

testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ." That section is intended to furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case." (Internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 321, 714 A.2d 686 (1998). Here, the plaintiff did not disclose that her experts would be testifying on the subject of future surgery. Accordingly, we cannot conclude that the court abused its discretion in sustaining the defendant's objection and in not allowing the plaintiff to discuss the possible need for future surgery. As we stated in *Fahey*, "[t]he consequences of the plaintiff's failure fully and fairly to disclose, despite his being given ample opportunity to do so, should fall upon the plaintiff rather than upon the defendant. To hold otherwise would unfairly deny the defendant . . . the opportunity to prepare for or to challenge the proposed testimony concerning the future risk of surgery." Id., 323. In this case, the consequences of the plaintiff's failure to disclose expert testimony is the court's sustaining the defendant's objection to the plaintiff's statement. The court's remarks were simply an explanation of its ruling. We are not able to conclude that the court abused its discretion in sustaining the defendant's objection to the plaintiff's mention that there may be a need for surgery in the future on the ground that there was no disclosure concerning the same.

B

The plaintiff claims that the court abused its discretion by not allowing her to read the pleadings to the jury.[4] The defendant argues that the court acted well

---

[4] At the start of the hearing in damages before the jury the following colloquy occurred:

"[The Plaintiff's Counsel]: Good morning, ladies and gentlemen. Your Honor, I'd like to read the pleadings into the record.

"The Court: What's that?

within its discretion because the reading of "the entire pleadings would have been a complete waste of time for the trial court, the jury and the parties" because the negligence of the defendant had been admitted. After reviewing the record, we cannot conclude that the court clearly abused its discretion in not allowing the plaintiff the opportunity to read the pleadings to the jury.

Civil trials during our legal history often have been commenced by reading the pleadings in the case to the jury. That permitted jurors to hear what counsel intended to prove before they actually began introducing the evidence to support their claims. Implicit in the language of Practice Book § 15-6 is the right to read the pleadings to the jury. Explicitly, however, this rule allows counsel to make a brief opening statement. As one commentary previously pointed out: "Although the language could be clearer, the authors believe the effect of this rule is to allow lawyers the choice of reading pleadings to the jury or of giving an opening statement. Prior to 1978, the general practice was to read the operative pleadings to the jury at the beginning of the case." W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Rules (4th Ed. 1998) § 15-6, authors' comments, p. 532. A subsequent edition of this same commentary, however, using the same prefatory language, without further explanation, now states that "the authors believe the effect of this rule is to

---

"[The Plaintiff's Counsel]: I'd like to read the pleadings into the record.

"The Court: No, we don't do that nowadays. You make a statement to the jury which outlines your case and what it is that you claim happened to your client as a result of the incident in question and so forth and so on. This is not a final argument, counselor.

"[The Plaintiff's Counsel]: Okay. Can we go outside the jury just for one second so I can make a comment?

"The Court: No. Go ahead."

Although we do not agree with the court's statement that pleadings no longer can be read to the jury, we nonetheless cannot conclude that the court abused its discretion in prohibiting counsel from doing so under the facts of this case.

*prevent* lawyers from reading pleadings to the jury." (Emphasis added.) W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Rules, (2005 Ed.), p. 671. We, however, agree with the original comment.

The authorities are divided on the issue of reading the pleadings to the jury at the commencement of trial. As explained in Corpus Juris Secundum: "While it has been held that the practice of reading the pleadings in the opening statement serves no legitimate purpose, is not to be commended, and is improper, it has also been held that [the] defendant is denied a fair trial where the court refuses to permit him to read the pleadings to the jury. It has further been held that the court may permit [the] plaintiff, in opening, to read, or to omit the reading of, the pleadings, and that it is proper for [the] plaintiff's counsel to read to the jury [the] defendant's plea of confession and avoidance as part of his opening statement." 88 C.J.S. 315, Trials § 161 (1955).

We find the authority of Corpus Juris Secundum particularly helpful regarding the placing of limitations on the reading of pleadings when an answer or other pleading has been withdrawn or abandoned, as the defendant in this case had abandoned his denial of negligence. "However, where certain parts of a pleading are stricken or withdrawn or abandoned, counsel should not be permitted to discuss them in his opening statement, and a refusal to permit [the] plaintiff to read allegations of a complaint as to wrongful acts of a third person, not necessarily at issue, is not error." Id. When the complaint is read to the jury with the answer, the jury is able to know what facts and allegations have been admitted and, therefore, could be used as evidence in the case. The jury is also able to determine what facts and allegations have been denied by the defendant. Thus, the issues to be tried are framed.

Even before adoption of Practice Book § 15-6, some judges had permitted counsel to make an opening statement to the jury in lieu of reading the pleadings. Rule-making authority wisely has been vested in the judges of the Superior Court. In 1978, the judges formally adopted a rule expressly authorizing such opening statements by permitting counsel in a jury case to make a brief opening statement and to apprise the jury in general terms as to the nature of the case. See Practice Book § 15-6. Because our rules of practice allow the making of opening statements, we agree that counsel must be extended some reasonable latitude in telling the jury what they intend to prove before the start of evidence. In permitting such latitude, however, Practice Book § 15-6 expressly gives the presiding judge "discretion as to the latitude of the statements of counsel."

Although, generally, we agree with the plaintiff that a reading of the pleadings still is permitted under our rules of practice, we do not agree that this rule creates an absolute right to read all of the pleadings unfettered by the court's discretion in all circumstances, especially when some of the pleadings have been abandoned. Additionally, upon our review of the record, we are unable to conclude that the court abused its discretion in this case or that the plaintiff was harmed by virtue of the court's refusal to allow her to read the pleadings in their entirety to the jury.

In addition to the problems with the plaintiff's insufficient pleading with regard to her claim for possible future surgical expenses as discussed in part II A, the record reveals that immediately prior to the start of trial, the defendant conceded negligence, apparently without filing an amended answer. Under these circumstances, to allow the plaintiff to read the pleadings in their entirety might have tended to confuse the jury. The Practice Book § 13-4 disclosure made by the plaintiff gave no notice that expert opinion would be offered

on the possibility of future surgery, and negligence, the only count in the complaint, no longer was contested. Furthermore, the written pleadings claimed possible future surgical expenses and denied negligence, issues that were no longer before the jury.

Because of that inconsistency, we cannot conclude that the court clearly abused its discretion in not allowing the plaintiff the opportunity to read the pleadings in their entirety to the jury.

III

The plaintiff next claims that the court improperly refused to admit signed medical reports from "Dr. Ann Skopek's office"[5] on the ground that they were expert testimony not disclosed properly pursuant to Practice Book § 13-4.[6] The plaintiff argues that Practice Book

_____

[5] Those reports are not contained in the appellate record.

[6] Practice Book § 13-4 provides in relevant part: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Section 13-2 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(1) (A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (B) Unless otherwise ordered by the judicial authority upon motion, a party may take the deposition of any expert witness disclosed pursuant to subdivision (1) (A) of this rule in the manner prescribed in Section 13-26 et seq. governing deposition procedure generally.

\* \* \*

"(4) In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue

§ 13-4 "is concerned only with disclosure of expert witnesses. It does not address the admissibility of medical reports and bills of a plaintiff's treating physician." She further argues: "The admissibility of the signed medical reports . . . are addressed in § 8-3 of the Connecticut Code of Evidence and is concerned with declarants, not witnesses." The defendant argues that "General Statutes § 52-174 (b) governs the admissibility of medical records in lieu of live testimony, not § 8-3 (5) of the Connecticut Code of Evidence. Moreover, the obligation to disclose experts, under § 13-4 (4) of the Practice Book, is not obviated because the plaintiff chose not to call an expert to the witness stand at trial." We agree with the defendant.

Prior to the commencement of evidence, the defendant filed a motion in limine to bar testimony from experts not disclosed properly under the rules of practice. By his motion, the defendant sought to preclude the plaintiff "from offering expert medical records in this case." The plaintiff filed a disclosure of expert witnesses, dated November 6, 2000, indicating that physicians Arthur M. Seigel and Marc Mann were expected to provide expert testimony on the subject matter of "the plaintiff's injuries and the causal relation of said injuries to the allegations and actions against the defendant(s) as stated in the complaint(s)." The grounds for each expert opinion were stated as follows: "Each doctor listed is licensed to practice medicine in the State of Connecticut as well as having several years of experience in the practical treatment of patients who have been exposed to *toxic vapors*." (Emphasis added.)

interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. . . ."

This disclosure pursuant to Practice Book § 13-4 never was amended. While the court was hearing argument on the motion in limine, the plaintiff asserted that this "scrivener's error" reference to toxic vapors was corrected and clarified in an answer to discovery requests.[7] The court also ascertained at that time that certain reports from Seigel and Mann had been supplied by the plaintiff to the defendant prior to trial. Although agreeing with the defendant that the disclosure of expert witnesses did not comply with our rules of practice, the court ruled that it would allow the plaintiff to introduce the disclosed reports of those physicians and to develop the information contained therein, but it further ruled that the plaintiff could not go beyond those reports. The plaintiff argues that she had a right to present these other medical reports, specifically the reports from "Dr. Ann Skopek's office" pursuant to § 8-3 (5) of the Connecticut Code of Evidence.

Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) Statement for purposes of obtaining medical treatment or advice pertaining thereto. A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice."

Section 8-3 (5) expressly and specifically concerns statements made in obtaining or advising on the issue of medical treatment. It does not concern medical reports and records created by medical experts in which they give their expert medical opinions. The admittance

---

[7] We have not been provided with a copy of that correction on appeal.

of such reports into evidence is governed by General Statutes § 52-174, which provides in relevant part: "(b) . . . [A]ny party offering in evidence a signed report and bill for treatment of any treating physician . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician . . . . The use of any such report or bill in lieu of the testimony of such treating physician . . . shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician . . . . (c) This section shall not be construed as prohibiting either party or the court from calling the treating physician . . . as a witness."

Additionally, we previously have held that § 52-174 does not relieve the offering party of the obligation of properly disclosing their experts in a timely manner pursuant to Practice Book § 13-4 (4). See *Rosenberg* v. *Castaneda*, 38 Conn. App. 628, 631–32, 662 A.2d 1308 (1995). If we were to adopt the plaintiff's argument that the admittance of medical reports is governed by § 8-3 (5) of the Connecticut Code of Evidence and that no disclosure is necessary, an offering party who had not properly disclosed a medical expert that he or she wanted to call to the witness stand could circumvent the failure to disclose simply by submitting the expert's medical reports, which would not be subject to cross-examination, deposition or rebuttal reports because the other party would not know about the evidence until it was offered during trial. This just does not make sense, especially where our rules of practice require full disclosure.

In *Rosenberg*, the defendants raised a claim regarding the trial court's decision to allow the medical report of the plaintiff's treating physician into evidence despite the plaintiff's failure to disclose the physician as an expert witness. Id., 630. Similar to the situation in the

present case, the physician was not called to the witness stand and only his report was introduced into evidence. On appeal, we explained: "[Practice Book] § 220 (D) [now § 13-4 (4)] is intended to furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case. In this regard, we point out the requirement that the mandated material must be furnished sixty days from the date the case is claimed to the trial list. It is readily apparent that introducing a medical report at the time of trial is of no value to a defendant in preparation for trial. The rules of discovery are designed to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." (Internal quotation marks omitted.) Id., 632. In *Rosenberg*, the plaintiff did not disclose the physician as an expert because he believed that there was no requirement to disclose when the physician was not being called to testify in person. Id., 632–33. Additionally, the plaintiff had not attempted to demonstrate good cause for the failure to disclose because he did not believe there was a duty to disclose. Id., 631–33. We held that because of this complete absence of a showing of good cause, the trial court had abused its discretion in admitting the report into evidence in the absence of a proper disclosure. Id., 633.

Despite the plaintiff's argument, here, that the admittance of the document is governed by § 8-3 (5) of the Connecticut Code of Evidence, we see little difference between her argument and the argument presented in *Rosenberg*. Pursuant to our rules of practice and our statutes, the plaintiff was required to disclose her experts, whether they were being called to testify personally or their reports were being offered as evidence in lieu of their personal testimony. See id., 631–33. Either way, the opinions and reports of the physicians

are testimony by witnesses. Accordingly, this claim is without merit.

IV

The plaintiff next claims that the court improperly allowed a certified copy of a criminal conviction of Arthur M. Seigel to be entered into evidence although Seigel was not a witness at trial and that the court then improperly testified as to its validity. The plaintiff argues that "Dr. Seigel never personally appeared at trial, only his reports were placed into evidence . . . [and, therefore,] Dr. Seigel is a declarant not a witness and . . . not susceptible to impeachment as a witness by any means." The plaintiff also argues that the certified conviction was admitted by the court immediately prior to recessing for the day, and, the next morning, the plaintiff sought to finish her objection, attempting to argue that no foundation had been laid to substantiate that Dr. Seigel and the Arthur M. Seigel named in the certified conviction were one and the same. The record shows that the plaintiff objected to the introduction of this document on the grounds that Seigel was not a witness and that his report was not testimony. The court overruled this objection, holding that the report was testimony and that Seigel was a witness. The plaintiff did not attempt to argue any other ground for her objection at that time, and the document was admitted as a full exhibit at the close of the hearing on November 6, 2003. As soon as the hearing resumed on November 7, 2003, however, the plaintiff asked to finish her objection, to which the court replied that counsel could not reargue the matter. The plaintiff's counsel then stated: "Okay. Then at this point in time I won't say anything." Although she has raised the issue on appeal, the plaintiff continues to rely primarily on her argument that Seigel was not a witness at trial. Accordingly, that is the only aspect of the claim we review.

On the basis of our conclusion, as stated in part III, that Seigel was a witness and his reports were testimony at trial, we reject the plaintiff's claim without further comment.

V

The plaintiff's final claim on appeal is that the trial judge improperly failed to recuse himself after considering facts outside of the record. The plaintiff argues that the court improperly reviewed medical records and deposition transcripts prior to the start of evidence and, thereby, violated canon 3 of the Code of Judicial Conduct. On the basis of our review of the record before us, we conclude that this claim lacks merit. Canon 3 of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

"The standard for determining whether a judge should recuse himself or herself pursuant to canon 3 (c) is well established. The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] . . . impartiality, on the basis of all of the circumstances. . . .

"The standard for appellate review of whether the facts require disqualification is whether the court's discretion has been abused. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Bunker*, 89 Conn. App. 605, 612–13, 874 A.2d 301 (2005).

The plaintiff argues that the court violated canon 3 (c) by improperly reviewing medical records before the opening of evidence and reading deposition testimony transcripts. As explained in part I, the plaintiff did not object or raise any issue of impropriety when the court asked to review the medical records of the plaintiff. Accordingly, we will not review that aspect of this claim.

As to the court's review of deposition testimony of the plaintiff, the following additional facts are relevant. The defendant filed several motions in limine, one of which was a motion to preclude any evidence or testimony on the issue of lost profits. The defendant alleged in his motion that "[d]uring her deposition in 2001, the plaintiff testified that she really didn't have any idea what she was claiming for lost profits." Additionally, the defendant sought to preclude testimony on lost profits because the plaintiff had not disclosed any expert on this issue. During the hearing on the motion in limine, the court reviewed sections of the plaintiff's deposition, over the plaintiff's objection, looking for her statements as to claims for lost profits. After assessing that a lost profits claim was alleged, the court denied the defendant's motion. The plaintiff was not aggrieved or harmed by this ruling in her favor. The plaintiff, then, made an oral motion, asking the court to recuse itself "on the basis that the court at this point in time has done an independent investigation of facts

having to do with preliminary matters in this case and has not considered only the evidence presented to it." The court denied the motion. We cannot conclude that the court's review of the plaintiff's deposition testimony, while considering a motion in limine, demonstrated some partiality or bias on the part of the judge. Accordingly, the judge did not abuse his discretion in declining to recuse himself.

The judgment is affirmed.

In this opinion the other judges concurred.